UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: URBAN COMMUNICATORS PCS LIMITED PARTNERSHIP, *et al.*, Debtors. | Chapter 11 Case Nos. 98-B-47996 (REG) 98-B-47997 (REG) 98-B-10086 (REG) Jointly Administered |
| GABRIEL CAPITAL L.P., Appellant, - against - URBAN COMM-NORTH CAROLINA, INC., Appellee. | 08-CIV-00946 (RWS)[1] |

**REPLY IN FURTHER SUPPORT OF GABRIEL CAPITAL L.P.'S APPEAL FROM THE BANKRUPTCY COURT'S DECISION AND ORDER ON GABRIEL ENTITLEMENT TO POST-PETITION INTEREST ENTERED DECEMBER 11, 2007**

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
David M. Friedman (DF-4278)
Robert M. Novick (RN-4037)
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800

*Counsel to Gabriel Capital L.P.*

[1] Also filed in 08 Civ 945 (RWS) and 08 Civ 947 (RWS).

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..... ii

REPLY ..... 1

I. The Debtor's Brief In Opposition Utterly Ignores the Sole Issue on Appeal: That the Second Circuit Prohibits, and No Authorities Support, Reducing a Secured Creditors' Recovery of Contractual Interest for the Benefit of a Debtor and Its Shareholder. ..... 1

II. The Loan Does Not Violate New York Usury Laws ..... 3

III. The Debtor's Argument That Its Equity Interest Holders Deserve a Share of Gabriel's Contractual Interest, Besides Being Irrelevant, Is Wholly Unsupported by a Record. ..... 5

CONCLUSION ..... 6

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re 139-141 Owners Corp.*, 306 B.R. 763 (Bankr. S.D.N.Y. 2004) .......... 2

*American Express Co. v. Brown*, 392 F. Supp. 235 (S.D.N.Y. 1975) .......... 4

*Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*, 310 F. Supp. 2d 556 (S.D.N.Y. 2003) .......... 4

*In re Integrated Res., Inc. Real Estate Ltd. P'ship Sec. Litig.*, 851 F. Supp. 556 (S.D.N.Y. 1994) .......... 4

*Manfra, Tordella & Brookes, Inc. v. Bunge*, 794 F.2d 61 (2d Cir. 1986) .......... 4

*Miller Planning Corp. v. Wells*, 253 A.D.2d 859, 678 N.Y.S.2d 340 (2d Dep't 1998) .......... 4

*Ruskin v. Griffiths*, 269 F.2d 827 (2d Cir. 1959), *cert. denied*, 361 U.S. 947 (1960) .......... 2, 3, 6

**Other**

*FCC v. NextWave Personal Communs. Inc.*, 2001 U.S. Briefs 653, 1 n.1, 2002 U.S. S. Ct. Briefs LEXIS 306 (U.S. S. Ct. Briefs 2002) .......... 6

Gabriel Capital L.P. ("**Gabriel**" or "**Appellant**"), by its undersigned counsel, respectfully submits this Reply in Further Support of its Appeal from the *Decision and Order on Gabriel Entitlement to Post-Petition Interest* (the "**Bankruptcy Court Order**"), entered December 11, 2007 (Docket No. 496[2]) by the Honorable Robert E. Gerber in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") in the above-referenced chapter 11 bankruptcy cases.

## REPLY

### I. The Debtor's Brief In Opposition Utterly Ignores the Sole Issue on Appeal: That the Second Circuit Prohibits, and No Authorities Support, Reducing a Secured Creditors' Recovery of Contractual Interest for the Benefit of a Debtor and Its Shareholder.

As expounded in Gabriel's opening brief, Gabriel's contractual right to 19% interest compounding quarterly, after nine years of delay, amounts to total indebtedness that would be the equivalent of interest having accrued at a simple rate of approximately 38%. The Bankruptcy Court acknowledged that awarding an oversecured creditor less than its contractual rate of interest is such an extraordinary occurrence that it could not recall having ever done so before. Bankruptcy Court Order[3] at 32. However, the Bankruptcy Court made an equitable determination that Gabriel should only be awarded interest to the extent of providing Gabriel the equivalent of simple interest of 25%.

Gabriel's Appeal from the Bankruptcy Court Order ascribes a single, but encompassing, error of law to the Bankruptcy Court: that it incorrectly held that it had equitable discretion to reduce Gabriel's contractual interest rate to an extent that renders UC-NC *more than solvent* in

---

[2] Items designated as the record on appeal by Appellant Gabriel are cited to herein by their Bankruptcy Court docket numbers.

[3] Capitalized terms not defined herein are intended to have the meaning ascribed to such terms in Gabriel's Opening Brief.

order to provide a distribution for its direct and indirect equity holders. Gabriel has not argued on appeal that the Bankruptcy Court lacked discretion to reduce its interest award to benefit UC-NC's unsecured creditors. Gabriel is not seeking an award of *all* of the compound interest it is entitled to under its contract amounting to an equivalent simple interest rate of 38%.[4] Gabriel also has not challenged the manner in which the Bankruptcy Court weighed equities in concluding that this should be the one case in memory in which it awards an oversecured creditor less than contractual history.

Rather, the sole issue raised by Gabriel on appeal is whether a court in this Circuit has any discretion at all to reduce a secured creditor's contractual entitlement to interest for the benefit of the debtor or its equity holders. *See* Opening Brief at 2, 3, 8-17. Gabriel argued that the Bankruptcy Court, and likewise this Court, are bound by the decision of the Court of Appeals for the Second Circuit in *Ruskin v. Griffiths*, 269 F.2d 827 (2d Cir. 1959), *cert. denied*, 361 U.S. 947 (1960) ("**Ruskin**"), holding that a court only has equitable discretion to limit the amount of interest awarded to a senior creditor for the benefit of junior creditors, but not for the benefit of equity interest holders, a practice which the Second Circuit characterized as "the opposite of equity." *See* Opening Brief at 12. *Ruskin* remains controlling law in the Second Circuit and elsewhere. *In re 139-141 Owners Corp.*, 306 B.R. 763, 771-73 (Bankr. S.D.N.Y. 2004) ("Ruskin remains effective to date in the Second Circuit and is recognized by other circuits." (citing numerous authorities)).

In its opposition brief, UC-NC cites *no contrary authority*, nor even proffers any unsupported theories as to why the Bankruptcy Court and this Court are not bound by *Ruskin*.

---

4 If its Appeal is successful, Gabriel's interest award would only rise by approximately three points (depending on the amount of administrative and unsecured claims allowed) above the amount awarded by the Bankruptcy Court, nowhere close to 38%.

(Gabriel has not discovered any contrary authority, either.) The Debtor instead focuses its efforts on an all-new and entirely frivolous argument that the Loan is usurious (which, as discussed below, it is not), and argues briefly, with no support from the record, the legally irrelevant proposition that its equity holders did a good job managing the Debtor. But they do not address the issue Gabriel has actually raised on appeal.

Accordingly, this Court should follow *Ruskin* by reversing the Bankruptcy Court Order and issuing a mandate to increase the award of interest to Gabriel to the point at which the UC-NC touches upon insolvency (within the range of an additional 2-4%, depending upon the amount of junior claims ultimately allowed).

## II. The Loan Does Not Violate New York Usury Laws.

The Debtor never argued below that the Loan is usurious or that the interest to which Gabriel is entitled should be limited to 25% by reason of the New York usury laws. The Bankruptcy Court did not find that the Loan is illegal. Usury was never raised below. Rather, the Bankruptcy Court *sua sponte* utilized the rates provided by the New York usury law as a "public policy benchmark" to guide it in exercising the equitable determination it mistakenly believed it could reach for the benefit of the Debtor's shareholders. *See* Bankruptcy Court Order at p. 36. Moreover, the Bankruptcy Court observed that 3/5 of the Loan would be exempt from the usury laws, thereby permitting Gabriel to receive interest at a blended rate that is well in excess of 25%, and well in excess of the amount sought by Gabriel through its Appeal (if the New York usury laws were otherwise a relevant limiting factor).[5] *See* Bankruptcy Court Order at p. 30, 36.

---

[5] *I.e.*, 0.6 of the Loan at 38% and 0.4 of the Loan capped at 25% yields a blended rate of 32.8%, more than Gabriel is seeking here. Therefore, even if 2/5 of the Loan were capped at 25% interest by operation of the New York usury laws, Gabriel could still receive substantially more interest than the Bankruptcy Court awarded it and all the interest

Most important of all, the Loan does not violate New York usury laws because the New York usury laws do not apply to defaulted obligations. *See Manfra, Tordella & Brookes, Inc. v. Bunge*, 794 F.2d 61, 63 (2d Cir. 1986) ("Because interest was charged only on [defendant's] past due debts, the usury laws do not apply."); *Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*, 310 F. Supp. 2d 556, 562 (S.D.N.Y. 2003) ("it is well established that the usury statutes do not apply to defaulted obligations"); *In re Integrated Res., Inc. Real Estate Ltd. P'ship Sec. Litig.*, 851 F. Supp. 556, 565 (S.D.N.Y. 1994) ("Any penalty interest rates or late fees assessed against the Plaintiffs do not constitute usury, since New York's usury statutes do not apply to defaulted obligations."); *American Express Co. v. Brown*, 392 F. Supp. 235, 238 (S.D.N.Y. 1975) (same); *Miller Planning Corp. v. Wells*, 253 A.D.2d 859, 678 N.Y.S.2d 340, 341 (2d Dep't 1998) ("the defense of usury does not apply where, as here, the terms of the mortgage and note impose a rate of interest in excess of the statutory maximum only after default or maturity").

The underlying facts are not disputed or disputable. The Loan provides for interest at the non-default rate of 15%. Bankruptcy Court Order at 2, 25. The interest rate only increases to 19% upon the occurrence of an event of default. *Id.* at 25-27. As a matter of mathematics, the effect of compounding does not cause the effective rate of interest to reach 25% simple interest until a point more than three years after the occurrence of a default, and more than two years after the passing of original maturity date without acceleration. Therefore, the Loan obviously is not usurious, because there are no circumstances under which the interest rate can reach the

---

it is seeking. Thus, while the conclusion that 2/5 of the Loan is subject to the New York usury laws is clearly erroneous for the reason set forth below, as a practical matter the issue is moot.

statutory caps (to the extent they would otherwise apply) until years after a default.[6] Thus, the Debtor's accusation of usury, besides being procedurally improper, is frivolous.

## III. The Debtor's Argument That Its Equity Interest Holders Deserve a Share of Gabriel's Contractual Interest, Besides Being Irrelevant, Is Wholly Unsupported by a Record.

The Debtor concludes by averring that the ultimately "successful" outcome in its case resulted from the efforts of equity holders. As discussed at length in Gabriel's opening brief, and also above, Courts do not have equitable discretion to reduce an over-secured creditor's contractual interest to provide recoveries for the debtor or its equity holders. Therefore, Gabriel submits that the Debtor's averments are legally irrelevant.

However, even if alleged shareholder heroics were relevant, there is no record in these cases suggesting that the Debtor's ultimate shareholders did anything to warrant a reallocation of Gabriel's contractual interest to them. The Opposition Brief is completely devoid of any record support for its allegations. Indeed, the Bankruptcy Court did not hear evidence on this subject.

This is not merely a fatal procedural infirmity, either. Gabriel does not believe that a record *could* have been made to support this argument had the Debtors or their shareholders attempted to do so below. For example, the existing record shows that equity holders did not "bankroll" the chapter 11 cases, but, rather, *one* equity holder made a loan to the Debtors, was repaid in full (ahead of Gabriel and all other creditors other than the FCC), and was well-compensated with 15% interest. *See* Docket No. 473 at p. 6.

Nothing in the record indicates that the other equity holders did anything at all, let alone anything warranting a reduction of Gabriel's interest for their benefit. The Debtors' only

---

[6] Gabriel points out that any rate of interest, if not paid for long enough by the obligor, eventually will compound to a simple rate equivalent of more than 25%. If the eventual effect of post-maturity compounding renders a loan usurious, all loans with compound interest would be usurious.

specific assertion is that they had "involvement by way of submission of an amicus brief to the Supreme Court in the Nextwave chapter 11 case." Opposition Brief at 8 (*sic*). Although this is not in the record, either, this Court concededly can take judicial notice that UC-NC's name appears on a multi-party amici brief filed in the NextWave case. However, the Court would likewise have to take notice that the brief states, at page 1: "This brief has been financed by the amici with support from Gabriel Capital, L.P., which is a creditor of amicus Urban Comm." *FCC v. NextWave Personal Communs. Inc.*, 2001 U.S. Briefs 653, 1 n.1, 2002 U.S. S. Ct. Briefs LEXIS 306 (U.S. S. Ct. Briefs 2002). Gabriel funded the preparation of the brief. Gabriel does not mean to participate in UC-NC's attempts to argue, for the first time on appeal, shareholders' legally irrelevant alleged deservedness of a recovery at Gabriel's expense. Rather, Gabriel wishes to illustrate the danger of crediting the Debtors' record-less factual argument on appeal.

## CONCLUSION

The Debtors attempt to divert the Court with a patently incorrect discourse on the applicability of the New York usury laws to the Loan, and unsubstantiated averments of equity holders having financially supported the bankruptcy cases, do not camouflage their failure to address the Second Circuit's decision in *Ruskin* that restricts courts' discretion to balancing equities and recoveries between competing creditors, not between creditors and a debtor or its shareholders, in determining whether there exists a basis to award an over-secured creditor less than contractual interest. Accordingly, Gabriel urges this Court to reverse and remand the Bankruptcy Court Order, with instructions to increase the award of post-petition interest to Gabriel to the highest amount in excess of 25% that still permits UC-NC to repay its unsecured creditors.

Dated: March 28, 2008
New York, New York

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

/s/ Robert M. Novick

David M. Friedman (DF-4278)
Robert M. Novick (RN-4037)
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800

*Counsel to Gabriel Capital L.P.*